UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No.  26cr10007 |
| ) | |
| v. ) | Violations: |
| ) | |
| HONG WANG ) | Counts One—Three: |
| a/k/a "John Wang", ) | Securities Fraud |
| ) | (18 U.S.C. § 1348) |
| Defendant ) | |
| ) | Forfeiture Allegation: |
| ) | (18 U.S.C. § 981(a)(1)(C) and 28 |
| ) | U.S.C. § 2461(c)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. Defendant HONG WANG, a/k/a "John Wang" ("WANG"), lived in New Jersey.

2. Company A was a pharmaceutical company based in Watertown, Massachusetts. Company A was an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act"). Shares of Company A traded publicly on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange.

3. Company A was developing Drug A, a cancer treating drug. Company A was based in Massachusetts.

4. WANG worked as a biostatistical consultant for Company A.

5. Individual 1 was Company A's Head of Biostatistics. Individual-1 worked in Massachusetts.

6.      Individual 2 was Company A's Chief Medical Officer.

## The Insider Trading Scheme

7.      In the course of his employment at Company A, WANG obtained material non-public information ("MNPI") about the fact that in December 2023, Company A planned to publicly announce positive test results concerning Drug A. While in possession of this MNPI—and in violation of the fiduciary duties and duties of trust and confidence that WANG owed to Company A as his employer—WANG acquired shares of Company A in brokerage accounts that he controlled, in an effort to profit from the eventual public announcement of the test results.

8.      On or about June 28, 2023, WANG entered into a consulting agreement with Company A to support its biostatistics group. The consulting agreement expressly prohibited WANG from trading on confidential MNPI that he gained while working at Company A.

9.      In or around September 2023, Company A extended WANG's consulting contract so that he could work on the upcoming December 2023 public disclosure concerning interim test results for Drug A (the "December Disclosure").

10.     On or about September 21, 2023, Individual 1 emailed several other employees, "I discussed with [Individual-2] and [WANG] about [WANG'S] contract that's ending at the end of Sept. We would like to extend the contract … to support disclosure for the upcoming investor's meeting for [Drug A] and potentially other deliverables as the needs emerge."

11.     In or around that time, WANG began extracting, reviewing, and preparing data related to the December Disclosure. WANG regularly communicated with Individual 1 to finalize their analysis of the data for the December Disclosure. They compared their individual analysis of the data and resolved any mismatches.

2

12. On or about November 15, 2023, WANG, Individual 1, and several other employees from Company A participated in a "cross-function review meeting" of the Drug A data. The purpose of the meeting was to demonstrate the results of analysis and solicit feedback from different employees. By the time of this meeting, all the attendees understood the positive trend of the emerging data.

13. During the course of his data analysis, and by no later than November 20, 2023, WANG learned that the test results for the December Disclosure were positive.

14. On or about November 20, 2023, WANG sent an email to several Company A employees, including Individual 1 and Individual 2, that included the draft "TFL" (or Tables, Figures, and Listings) for Drug A in connection with the December Disclosure. The TFL amounted to a near-final collection of the relevant data for the December Disclosure.

15. That same day, WANG purchased 6,000 shares of Company A Stock for more than $10,000 in a brokerage account that he shared with his wife (the "Joint Account 1").

16. Between approximately November 21, 2023 and November 30, 2023, WANG purchased approximately 38,000 additional shares of Company A stock for more than $59,000 in Joint Account 1. During this time, WANG worked with others at Company A to finalize the December Disclosure.

17. On or about December 1, 2023, WANG sent an email to several employees at Company A, including Individual 1 and Individual 2, that included WANG's final draft of the data for the December Disclosure.

18. Shortly after sending the email, WANG purchased approximately 5,000 shares of Company A stock in Joint Account 1 for more than $7,500.

19. After circulating the draft data on or about December 1, 2023, WANG had largely completed his work on the December Disclosure. Between on or about December 1, 2023 and on or about December 12, 2023, WANG provided limited assistance to Individual 1 in connection with the December Disclosure.

20. Between on or about December 4, 2023 and on or about December 12, 2023, WANG purchased more than 112,000 shares of Company A for more than $230,000. WANG purchased these shares using four different investment accounts that he controlled, including Joint Account 1.

21. On December 12, 2023, at the end of the business day, Company A disclosed the positive results in its study of Drug A.

22. On or about December 13, 2023, the share price of Company A increased by 135 percent. WANG then sold 20,000 shares of Company A and held on to the remaining shares.

23. In all, through his trading in Company A stock between November 20, 2023 and December 14, 2023, WANG made more than $489,000 in profits.

## COUNTS ONE—THREE
## Securities Fraud
## (18 U.S.C. § 1348)

The Grand Jury charges:

24. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 23 of this Indictment.

25. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

HONG WANG,
a/k/a "John Wang",

did knowingly execute and attempt to execute a scheme and artifice (a) to defraud persons in connection with securities of an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, to wit, the common stock of Company A; and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, to wit, the common stock of Company A, in that WANG traded in the shares of Company A while in possession of material non-public information, as indicated below:

| COUNT | APPROXIMATE DATES | TRANSACTION |
|---|---|---|
| 1 | November 20, 2023 | Order to Purchase Company A Stock |
| 2 | December 1, 2023 | Order to Purchase Company A Stock |
| 3 | December 6, 2023 | Order to Purchase Company A Stock |

All in violation of Title 18, United States Code, Section 1348.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

26. Upon conviction of one or more of the offenses in violation of 18 U.S.C. § 1348, set forth in Counts One through Three above, the defendant,

HONG WANG,
a/k/a "John Wang",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

    a. Up to $337,352.38 in funds, monies, and other things of value held in or on behalf of WANG in Vanguard Group account number #3673, held in the name of "Ruiyun Jiang & John Hong Wang TEN IN COM";

    b. Up to $48,000 in funds, monies, and other things of value held in or on behalf of WANG in Vanguard Group account number #9262, held in the name of "Ruiyun Jiang & Hong Wang TR Precision Clinical Consulting LLC Pooled Account";

    c. Up to $40,937 in funds, monies, and other things of value held in or on behalf of WANG in Vanguard Group account number #0677, held in the name of "John H Wang IRA VFTC AS CUSTODIAN ROTH ACCOUNT"; and

    d. Up to $63,450 in funds, monies, and other things of value held in or on behalf of WANG in Vanguard Group account number #4507, held in the name of "John H Wang IRA VFTC AS CUSTODIAN ROLLOVER ACCOUNT."

27. If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

███████████████
FOREPERSON

/s/ Benjamin A. Saltzman
BENJAMIN A. SALTZMAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: January 13, 2026
Returned into the District Court by the Grand Jurors and filed.

Dawn M. King  1-13-26
DEPUTY CLERK